UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY W. SASSER,

v.                                               Case No. 8:03-cr-422-T-17MSS
                                                               8:07-cv-961-T-17MSS

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Gary W. Sasser's 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. CV-1; CR-72. A review of the record demonstrates that, for the following reasons, the motion to vacate must be denied.

Background

On October 9, 2003, Sasser was indicted for two counts of possession of methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii), and one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). CR-1. On January 21, 2004, Sasser pled guilty to Counts One and Two (methamphetamine possession) with a written plea agreement. CR-17 (plea agreement); CR-46 at 27 (guilty plea transcript).

On February 10, 2004, the district court accepted his plea and adjudicated him guilty. CR-27 Sasser was sentenced to 168 months' imprisonment, with an alternative sentence of 120 months' imprisonment, to be followed by 48 months' supervised release. CR-31, 32. Sasser timely filed a notice of appeal, CR-33, 35, and on May 5, 2005, after granting the Government' motion for remand, the Eleventh Circuit Court of Appeals vacated his sentence and remanded the case back to the district court for resentencing. CR-55.

At Sasser's resentencing, the district court imposed a term of 168 months'

imprisonment, to be followed by 48 months' supervised release. CR-58, 59. Sasser appealed, CR-61, but his appeal was dismissed on June 7, 2006, due to a valid appeal waiver. CR-71.

Sasser's pending 2255 motion, signed May 29, 2007, is timely. CR-72; CV-1.

Appeal Waiver

As part of his plea agreement, Sasser expressly waived the right to appeal his sentence "directly or collaterally, on any ground, . . . except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines." CR-17 at 11. Sasser also stipulated that the district court had "jurisdiction and authority to impose any sentence up to the statutory maximum[.]" Id. Sasser also acknowledged that his sentence would "be determined solely by the Court, with the assistance of the United States Probation Office," that any discussions between Sasser or his attorney and the attorney or other agents for the government regarding any recommendations by the government would not bind the district court, and that, if the district court rejected any recommendations, Sasser would not be permitted to withdraw his plea pursuant to the plea agreement. Id. at 10.

During Sasser's guilty plea hearing, the magistrate judge informed Sasser that he faced a minimum sentence of five years' imprisonment and a maximum sentence of forty years' imprisonment on each count based on his guilty plea. CR-46 at 20. Sasser stated that he understood. Id.

The magistrate judge discussed the sentencing process with Sasser, confirming that Sasser understood that process. CR-46 at 8-9, 12-14, 18-19. Sasser acknowledged that he understood that, if his sentence turned out to be less favorable than he had hoped, he

would not have the right to withdraw his plea. Id. at 19.

The magistrate judge also reviewed with Sasser the provision in his plea agreement in which he waived the right to appeal his sentence:

> THE COURT: Turning back over there to Paragraph 11–I'm sorry–Page 11, Paragraph Five, there is a provision there, Mr. Sasser, called the Appeal of Sentence Waiver. In a typical case when a Defendant is charged and convicted after a jury trial, that Defendant has almost, as a matter of right, the ability to file an appeal to a higher court of his or her sentence.
>
> By signing this plea agreement, you are giving up your right to file any such appeal, except in the very limited circumstances that are set forth in this plea agreement. First, if the Government, for some reason, were to appeal your sentence, you could file a cross-appeal.
>
> Second, if the Court were to impose some sort of sentence that were illegal in some way other than in the calculation of the guideline range, you could file an appeal of that sentence claiming it to be illegal. And third, if the Court were to impose a sentence that exceeds the statutory maximum or the guideline maximum, then you could file an appeal of that sentence claiming it to be excessive.
>
> But only in those limited circumstances can you file any appeal. If you attempt to file an appeal in any other circumstance, in all likelihood the Appeals Court will reject your appeal without even looking at it to see whether it has any merit. Do you understand that?
>
> MR. SASSER: Yes.

CR-46 at 17-18.

The magistrate judge then asked the government to provide the factual basis for the charges, advising Sasser to listen carefully and identify any dispute he had with those facts. CR-46 at 23-24. The facts recited by the government included possession with intent to distribute more than fifty grams of a mixture or substance containing a detectable amount of methamphetamine by Sasser on September 5, 2003, as well as the seizure of drugs, money (drug proceeds), vehicles (purchased with drug proceeds) and a firearm during a

search of Sasser's residence. Id. at 24-25. In addition, when Sasser was arrested on September 8, 2003, officers found methamphetamine and money (drug proceeds). Id. at 25. Sasser advised the magistrate judge that the facts as recited by the Government were true, he had no dispute with any of the facts, and they satisfied the legal elements of the offenses with which he was charged. Id. at 25-26.

On July 23, 2004, this Court conducted Sasser's sentencing hearing. CR-31; CR-43. When sentencing Sasser, this Court imposed "alternative sentences," apparently anticipating that the United States Supreme Court might determine, pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), that the Court could not constitutionally increase Sasser's sentencing guidelines offense level based on facts to which Sasser had not admitted during his plea colloquy. See CR-43 at 8-10. Sasser was sentenced to serve 168 months' imprisonment and "in the *Blakely* alternative," to serve 120 months' imprisonment. CR- 31.

Sasser appealed his conviction and sentence, arguing that the district court had erred by imposing the alternative sentences. While the appeal was pending, the United States Supreme Court issued its opinion in *United States v. Booker*, 543 U.S. 220 (2005), which established that the district court had erred by imposing the alternative sentences. Consequently, the government filed a motion in this Court asking this Court to certify, pursuant to *United States v. Ellsworth*, 814 F.2d 613 (11th Cir. 1987), that it was inclined to resentence Sasser. CR-48.

On March, 7, 2005, this Court issued an order certifying that remand for resentencing was warranted. CR-51. On May 5, 2005, the appellate court vacated Sasser's sentence in its entirety and remanded in full to the district court for a new sentencing

hearing and for resentencing. CR-55. In its remand order, the appellate court stated, "At the new sentencing hearing, the district court is still required to make guidelines calculations, should determine the guidelines range, and shall consider the guidelines range along with the statutory factors contained in 18 U.S.C. § 3553(a)." CR-55.

This Court conducted Sasser's new sentencing hearing on September 9, 2005. Doc. CR-58; CR-69 (transcript). This Court sentenced Sasser to serve 168 months' imprisonment, to be followed by 48 months' supervised release, stating that the Court had reviewed the PSR and was sentencing Sasser pursuant to 18 U.S.C. §§ 3553 and the Sentencing Reform Act of 1984 as modified by *Booker*. CR-69 at 29-20. This Court found "no mitigating or aggravating circumstances and sentence[d] the defendant to the low end of the guideline range as the Court [found] that to be adequate." CR-69 at 32. This Court also stated that it was sentencing Sasser "[u]nder 3553(a) (1) through (7)." Id. This Court asked, "Now, is there any objection to my phrasing this the Court finds no mitigating or aggravating circumstances and sentences the Defendant to the low end of the guideline range as the Courts finds it to be adequate under 3553(a)(1) through (7) as the U.S. Probation Office will provide in supplement hereto?" *Id.* at 34. Sasser's counsel replied, "No." *Id.* Sasser did not object to the sentence, contend that the Court had not adequately considered the section 3553(a) factors, or contend that the sentence imposed was unreasonable. See CR-69 at 33-36.

Sasser appealed again. CR-61. In his brief, Sasser asserts that the district court relied on hearsay information in determining Sasser's guidelines offense level, improperly increased Sasser's offense level pursuant to USSG §2D1.1 based on the presence of a firearm in Sasser's home, and determined his guidelines range sentence based on facts

5

that he had not admitted during the plea colloquy. See Attachment A at 13-18 (copy of Sasser's brief). On June 7, 2006, his appeal was dismissed due the valid appeal waiver contained in Sasser's plea agreement. CR-71. See Attachment B (copy of United States' Motion to Dismiss (without attachments)).

## Discussion

Sasser raises two claims of ineffective assistance of counsel. At Ground One, Sasser claims that his counsel failed to object to a drug quantity "enhancement" at his resentencing, which in turn, forestalled Sasser from raising that claim on direct appeal. CV-4 at 4. At Ground Two, Sasser claims his counsel failed to preserve the "firearm enhancement issue" at resentencing. CV-1 at 5. According to Sasser, "[w]ithout an objection, my plea agreement does not allow me to appeal this issue." Id. These claims are negated by the record.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); see also *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *Strickland*,

6

466 U.S. at 687, 694. "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Thus, if the defendant fails to show that he is prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *See Coulter v. Herring*, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776 (1987)). Furthermore, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler*, 218 F.3d at 1313. This burden of persuasion, though not insurmountable, is a heavy one. *See id.* at 1314. "'Judicial scrutiny of counsel's performance must be highly deferential,'" and courts "must avoid second-guessing counsel's performance." *Id.* at 1314 (quoting *Strickland*, 466 U.S. at 689). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. *See id.* at 1314-15 n.15. Thus, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Id.*

Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." *Id.* To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." *Id.* at 1315 n.16. Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." Id. at 1317.

Sasser's original sentence, providing two alternate sentences, was completely vacated and remanded by the appellate court for a new sentencing hearing. CR-55. Contrary to Sasser's claims, at his September 9, 2005 resentencing, Sasser's counsel did object to the PSR's drug quantity calculation, arguing that Sasser had admitted to 478 grams of methamphetamine, but not the one pound of methamphetamine attributed to him by a confidential source. CR-69 at 9-12. Regarding the firearm assessment, Sasser's counsel argued that although Sasser stipulated that law enforcement found a firearm during a search of his residence, Sasser did not admit that he owned or possessed the firearm or that it was used in connection to a drug trafficking offense. *Id.* at 12-13. Sasser's counsel

further argued that in light of recent case law (including *Blakely*[1] and Booker), the sentencing guidelines were now advisory, urging the Court not to apply the four-level enhancements (two levels for drug quantity, two levels for the firearm) because Sasser was not placed on notice for those enhancements. Id. at 13-14. This Court flatly rejected those arguments, finding that the drug quantity and firearm are relevant conduct factors the Court should consider when fashioning a sentence. *Id.* at 22-23.

Indeed, application of these sentencing factors was entirely proper. Section 3553(a), which remains unaffected by *Booker*, sets forth the factors a sentencing court should consider, including "the nature and circumstances of the offense and the history and characteristics of the defendant," and, among other things, the kinds of sentence and the sentencing range established for "the applicable category of offense committed by the applicable category of defendant as set forth in the [sentencing] guidelines[.]" 18 U.S.C. § 3553(a). Thus, district courts must continue to examine and consider the sentencing guidelines when fashioning appropriate sentences. *See Booker*, 543 U.S. at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."); *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005) ("The same extra-verdict enhancement provisions apply after *Booker* as before. . . . All that has changed is that the guidelines range is now advisory; it no longer dictates the final sentencing result but instead is an important factor that the sentencing court is to consider along with the factors contained in § 3553(a) in reaching the sentencing result.") *cert. denied*, 545 U.S. 1127 (2005); *see also United States v. Rita*, 2007 WL

---

[1] *Blakely v. Washington*, 542 U.S. 296 (2004).

1772146 at *7, _ S. Ct. _ (June 21, 2007) (sentencing judge begins with PSR and interpretation of the guidelines, then hears arguments as to whether a guideline sentence should be applied). On remand, this Court was specifically instructed to make guidelines calculations, determine the guidelines range, and consider the guidelines range along with the statutory factors contained in 18 U.S.C. § 3553(a). CR-55. At Sasser's resentencing, this Court was very clear about its determination as to drug quantity and the firearm, finding that there was an "adequate foundation for following the advisory sentencing guidelines in this case and the range that is appropriate therein." CR-69 at 23.

Sasser appears to believe that his counsel's alleged failure to raise these objections at sentencing somehow affected his ability to appeal these claims. As noted above, contrary to his claims, Sasser's counsel did raise these objections at his resentencing. Furthermore, counsel raised these same issues on direct appeal. See Attachment A at 13-18. The appeal was ultimately dismissed, however, due to Sasser's valid appeal waiver (discussed above) in which Sasser waived his right to appeal his sentence on these grounds. Accordingly, Sasser's counsel was not ineffective and Sasser is entitled to no relief.

Accordingly, the Court orders:

That Sasser's motion to vacate (cv-1; cr-72) is denied.  The Clerk is directed to enter judgment against Sasser in the civil case and to close that case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to

appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on September 10, 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Kelley Clement Howard-Allen
Gary W. Sasser